IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Cr. No. 07-021-01 |
| v. ) | Judge John D. Bates |
| ) | |
| JOHN BAGGETT ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant John Baggett, through undersigned counsel, respectfully submits this memorandum in aid of sentencing. We ask that the Court, after considering the totality of the record in this case, including the Government's motion for a downward departure pursuant to U.S.S.G §5K1.1, sentence Mr. Baggett to probation. The Government also recommends a sentence of probation, describing it as a "reasonable sentence under the circumstances."

**I.     INTRODUCTION**

John Baggett comes before this Court for sentencing after having pled guilty to one count of conspiracy in violation of 18 U.S.C. §371. As this Court knows, Mr. Baggett entered into a pre-indictment plea with the United States and cooperated in the ongoing criminal investigation as part of his plea agreement. His criminal conviction arises from his employment with American Electrical Power (AEP) in 2001 and 2002 and a scheme under which AEP as well as other natural gas traders provided misleading price information to trade publications that provided public information on the price of natural gas. 7 U.S.C. §13(a)(2) makes it illegal to provide false price information that may impact the price of a commodity. Mr. Baggett was charged in a conspiracy with two other defendants, whose cases are pending before this Court,

1

Joseph Foley and Michael Hoover. Mr. Hoover pled guilty to the same charge and has been sentenced to probation.

## II.  BACKGROUND

Mr. Baggett is 41 years old. The Pre-Sentence Report provides a detailed and accurate description of Mr. Baggett's life that we will not repeat here. Of significance is that other than one previous DUI matter, which is over 10 years old, Mr. Baggett has no prior arrest or conviction records. He has a college degree from Texas A&M University and is a certified public accountant, licensed in Texas. For his entire adult life, Mr. Baggett has been productively employed in a professional capacity.

In 1997, Mr. Baggett began working for Equitable Resources Company as a gas marketing accountant. In November 1999, Equitable Resources sold its trading floor and assets to American Electric Power ("AEP") and Mr. Baggett remained employed by AEP. In January 2001, Mr. Baggett became a "trader" with AEP's Gulf Coast Desk and became responsible for natural gas sales and purchases made by AEP. From March 2001 through October 2002, Mr. Baggett was a physical or cash trader on the natural gas trading floor at AEP. During this time, he reported to Joseph Foley, a codefendant in the conspiracy charged in this case.

For a five-month period of time between December 2001 and May 2002, Mr. Baggett assisted Mr. Foley in reporting fictitious trades to market publications, known as IFERC and Gas Daily, for the purpose of skewing the prices published for natural gas in a manner that would be more favorable to AEP's natural gas trading positions.

Long before Mr. Baggett became a beginning natural gas trader with AEP, the practice of reporting fictitious information to trade publications was endemic throughout the industry. Furthermore, the practice of reporting such fictitious trades was well-established at AEP before

Mr. Baggett began working there as a gas-trader. While this does not excuse his conduct, which he recognizes was wrong, Mr. Baggett, as a young employee of AEP, was thrust into a position where the practice was ongoing and institutionalized within the company.

Furthermore, Mr. Baggett was at the lowest level of this conspiracy. His supervisor, Joseph Foley, directed Mr. Baggett to report the fictitious trades. Mr. Foley and other supervisors at AEP profited handsomely from the practice. In fact, Mr. Foley participated in a profit-sharing plan that awarded him over $1,000,000 in 2002, the relevant time period of the criminal conduct. For that same year, Mr. Baggett's bonus was $70,000. Another of Mr. Baggett's coconspirators, Michael Hoover, who was given a two-year probationary sentence by this Court just three weeks ago, was in a similar position as Mr. Baggett and responsible for similar criminal conduct, but even Mr. Hoover received a bonus of $135,000, almost twice that of Mr. Baggett.

In short, as a young man, trying to make a successful career for himself with a prominent company, Mr. Baggett found himself in an untenable situation of following the directions of his supervisors in engaging in an illicit practice that was endemic in the industry. This does not excuse Mr. Baggett's conduct, but it a mitigating factor that the Court should consider.

### III.    ADVISORY GUIDELINES SENTENCING RANGE

Under the plea agreement, the parties agree, and the Pre-Sentence Report writer concurs, that Mr. Baggett's base offense level is **6** pursuant to the pertinent guideline, U.S.S.G. § 2B1.1(a)(1). The parties also agree that the loss amount exceeds $70,000, but is less than $120,000, resulting in an **8**-level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(H). Finally, the parties agree that Mr. Baggett's base offense level should be decreased by two levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). The parties therefore agree that

Mr. Bagget's base offense level is *12*, prior to any other departures.  The Pre-Sentence Report writer concurs.

In addition, Mr. Baggett cooperated with the government's investigation and provided "substantial assistance" to the government under U.S.S.G. § 5K1.1.  Based upon Mr. Baggett's substantial assistance, the government has filed a motion for a downward departure of *4* additional points.  We will not repeat here the details of Mr. Baggett's substantial assistance, which is set forth with specificity in the government's motion.  We agree with the government's position in this regard.

With an additional downward departure of 4 points, Mr. Baggett's ultimate offense level is *8*.  This places Mr. Baggett in Zone A and makes him eligible for a probationary sentence.

## IV. SENTENCING UNDER *BOOKER*

As the Court is well aware, the Sentencing Guidelines are merely advisory because of the Supreme Court's holding in *United States v. Booker*, 125 S. Ct. 738, 756 (2005).  Under *Booker*, sentencing courts must treat the advisory guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).  Those factors are:

1) the nature and circumstances of the offense;

2) the history and characteristics of the defendant;

3) the kinds of sentences available;

4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

5) the need to provide restitution to any victims of the offense.

We submit that based on the circumstances we have described above, the factors set forth in 18 U.S.C. § 3553(a) are satisfied with a probationary sentence.  Mr. Baggett was a very low-level participant in a conspiracy that existed throughout the industry and within his company long

before he started his employment with AEP. He participated in it for only a short period of time. He has provided substantial cooperation and assistance to the United States and accepted responsibility for his actions. His codefendant, Michael Hoover, who was similarly situated to Mr. Baggett in terms of criminal culpability (and even profited to a much greater extent), has already received a probationary sentence. And, as the government points out, there is no need for restitution in this case.

**WHEREFORE,** for all the reasons set forth above, Mr. Baggett asks this Court to sentence him to probation.

Respectfully submitted,

SCHERTLER & ONORATO, L.L.P.

_____/s/_____
David Schertler
Robert J. Spagnoletti
601 Pennsylvania Avenue, N.W.
North Building, 9th Floor
Washington, DC  20004
Telephone:  (202) 628-4199
Facsimile:  (202) 628-4177